Richard Gounaud
9 Cliffwood Road
Chester, NJ 07930
908-879-3875
rgounaud@gmail.com

**FILED**

DEC 07 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br><br>Plaintiff,<br><br>vs.<br><br>RMR ASSET MANAGEMENT COMPANY, ET AL.,<br><br>Richard C. Gounaud - Defendant | Civil Case No: '18CV1895 AJB LL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S COMPLAINT**<br><br>**DATE: JANUARY 31, 2019**<br>**TIME: 2:00 P.M.**<br>**COURTROOM: 4A**<br>**JUDGE: HON. ANTHONY J. BATTAGLIA**<br>**MAGISTRATE: HON. LINDA LOPEZ** |

DEFENDENTS MOTION TO STRIKE PLAINTIFF'S COMPLAINT - 1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Defendant Richard Gounaud, appearing pro se in this matter, hereby moves this court to dismiss and/or strike the Complaint in its entirety or in part because it fails to present a "simple, concise and direct" statement of the causes of action and is replete with redundant, immaterial, impertinent and scandalous material. Accordingly, Defendant Richard Gounaud has no notice of the bases of Plaintiff Securities and Exchange Commission's ("Plaintiff") claims. In the absence of the requested relief, Defendant Richard Gounaud will suffer prejudice by having to sift and decipher through allegations the majority of which appear to have absolutely nothing to do with the underlying Plaintiff's claims.

The Plaintiff's complaint is more appropriate for a press release than a legal pleading filed in Federal Court. It is replete with inflammatory slang terms and allegations about Defendant Richard Gounaud that have no basis in law and serve no purpose other than to inflame and scandalize this lawsuit and goes well beyond the "ordinary and concise" facts required in a complaint. *Cal. Code Civ. Proc. § 425.10.* The Plaintiff starts out their complaint in paragraph 1 in that precise "ordinary and concise" requirement as it alleges the defendants "…to purchase new issue municipal bonds and quickly re-sell…" and then immediately departs from the ordinary and concise and introduces the inflammatory slang and negative term "flip" writing "…and quickly re-sell or "flip" those bonds to broker-dealer customers." *See Paragraph 1*

DEFENDENTS MOTION TO STRIKE PLAINTIFF'S COMPLAINT - 2

*Plaintiffs Complaint*. The Plaintiff then goes on to use the word "flip" in one way or another 61 additional times[1] in their complaint using derogatory and inflammatory variations "flip". "flipper", "flippers", "flipping bonds". Id.

The Plaintiff's use of the word flip and its variations are harmful, derogatory, and inflammatory having no basis in law. There are no laws or rules in the Exchange Act or in the MSRB rules, as quoted by the Plaintiff, that mention the term variations "flip". "flipped", "flipper", "flipping bonds". In fact, the Plaintiff could easily have used the actual legally accepted terminology "buying and selling quickly" "resold" or "traded the bonds the same day" and had they done so, the complaint would have taken an entirely different tone. The Plaintiff's complaint offers no legal basis for the use of a slang term in their complaint. In fact, in the Plaintiff's complaint, the 4 claims for relief do not even mention the terms in question, meaning that there is no legal basis for the use of the terms and their only use is to scandalize and inflame the complaint.

Equally as disturbing is the Plaintiff's press release. On the day of filing the complaint, the Plaintiff released a press statement headlined "SEC Files Charges in Municipal Bond "Flipping" and Kickback Schemes." *SEC 2018-153*.[2] It is disturbing because the Plaintiff clearly states within its press release that "flippers" is industry slang for buying and selling quickly. Clearly, though at no point in the press release does the Plaintiff tell the reader that the buying and selling quickly of any security is not illegal, however they do insinuate to the public that it is illegal. As in the actual complaint, the Plaintiff is clearly trying to create new law through their press release

---

[1] See attached list of uses of the slang word flip, which is hereby incorporated herein by reference
[2] See attachment:

DEFENDENTS MOTION TO STRIKE PLAINTIFF'S COMPLAINT - 3

and complaint, an attempt that to date has been highly successful since this release caused a flurry of Wall Street executives running around calling all day traders "flippers".

## II. ARGUMENT

### A. A Motion to Strike is Proper Where a Pleading Does Not Conform to the Laws of the State, a Court Rule, or Order of the Court

A motion to strike may be used to "[ s ]trike out all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court." *Cal. Code Civ. Proc., § 436, subd. (b); see also Cal. Code Civ .. Proc., § 435, subd. (b)(l)* ("Any party ... may serve and file a notice of motion to strike the whole [of a pleading] or any part thereof."). A court may strike an entire pleading where there are improprieties in the form of the pleading or the procedures pursuant to which it was filed. <u>Ferraro v. Camarlinghi</u> *(2008) 161Cal.App.4th509, 528;* <u>Lodi v. Lodi</u> *(1985) 173 Cal.App. 3d 628, 631 (1985)* (defects in claims apparent on face of complaint; "complaint was not drawn in conformity with the laws of this state and was thus properly subject to the court's own motion to strike under [section 436(b)]"). The Court may also strike "improper," "false," or "irrelevant" matters from a complaint. *Cal. Code Civ. Proc., § 436, subd. (a).*

Therefore, references in the Complaint to "flip". "flipped", "flipper", "flipping bonds', should also be stricken because they are not legally accepted terminologies. In addition, those terms are superfluous and not related to the any elements of the cause of action. Plaintiff should be required to resubmit an amended Complaint with these

DEFENDENTS MOTION TO STRIKE PLAINTIFF'S COMPLAINT - 4

portions removed, the Court should order that all copies of the original Complaint be stricken from the record.[3]

### B. The Use of the Slang Terms "Flipping" or "Flip" in Plaintiff's Complaint is Prejudicial

The use of slang terms "Flipping" or "Flip" is often prejudicial and can imply wrong doing. The court has viewed the use of colloquial, slang and inflammatory characterizations such as the terms and phrases "ponzi scheme," "playing with house money," and having "skin in the game" as potentially prejudicial to Defendant as such terms may imply wrongdoing. See Roda Drilling Company v. Siegal, Case No. 07-CV-400-GFK-FHM. (N.D. Okla. Jun. 29, 2009).

In the instant case, the paragraphs complained about referencing 62 uses of "flip", "flipped", "flipper", "flipping bonds" are scandalous in that they "improperly and excessively impugn Defendant Richard Gounaud's moral character" without factual basis. Because of the complaint's references to those offensive terms, it reflects cruelly upon Defendant Richard Gounaud's moral character, and the use of those repulsive terms detract from the dignity of the court, and they should be stricken under this standard.

### C  A Higher Standard

---

[3] See Alvarado-Morales v digital Equipment Corporation, 843 F.2d613 (1st cir. 1988).

DEFENDENTS MOTION TO STRIKE PLAINTIFF'S COMPLAINT - 5

It has been long stated that Government lawyers should be held to a higher standard. "(holding that the principle in the Supreme Court's *Berger* decision that "government lawyers have obligations beyond those of private lawyers ... appl[ies] with equal force to the government's civil lawyers.")" *Dacosta v. City of N.Y.*, 296 F. Supp. 3d 569, 600 (E.D.N.Y. 2017).

The ABA Code of Professional Responsibility holds government lawyers to a higher standard. **ABA MODEL CODE OF PROFESSIONAL RESPONSIBILITY EC 7-14 (1981).**

Plaintiff's Complaint submitted in this case was authored by 5 lawyers with decades of experience and education. These 5 lawyers chose to take every advantage possible to characterize the buying and selling of securities in the most negative of lights that they possible could, instead of letting the charges stand alone on their own merit. They have attempted to take every step possible to win without concern that they may have poisoned their own case with their unjustified derogatory and inflammatory slang.

### III. CONCLUSION

For all the reasons set forth above the court must dismiss or strike the Complaint in its entirety because it violates both F.R. Civ. P. 8 and F. R. Civ. P. 12 (f). If the court does not dismiss or strike the Complaint in its entirety, Defendant Gounaud respectfully requests the Court to strike the scandalous and impertinent material in the Complaint, which clearly impugns his character and create a substantial risk of serious prejudice to him. Defendant Gounaud should not be required to answer the Complaint in its present state.

Respectfully submitted this 6th day of December, 2018.

*[signature]*
Richard Gounaud Pro Se

**CERTIFICATE OF SERVICE**

I hereby certify that I transmitted the foregoing documents using the U.S. Postal Service on 12/6/2018, 2018 and that service on all counsel of record will be accomplished by First Class Mail to:

Nicholas A. Pilgrim
Security and Exchange Commission
100 F Street, NE
Washington, DC 20549

Kevin Guerrero
Security and Exchange Commission
100 F Street, NE
Washington, DC 20549

Warren E Greth Jr
Security and Exchange Commission
100 F Street, NE
Washington, DC 20549

Cori M. Shepherd
Security and Exchange Commission
100 F Street, NE
Washington, DC 20549

Thomas Knuts
Sher Tremonte LLP
90 Broad Street,
23rd Floor
New York, New York 10004

DEFENDENTS MOTION TO STRIKE PLAINTIFF'S COMPLAINT - 7

1 | Attorney for Michael S. Murphy and Jocelyn Murphy

2 | Thomas D. Mauriello
3 | Mauriello Law Firm APC
  | 1230 Columbia Street, Suite 1140
4 | San Diego, CA 92101
  | Attorney for Michael S. Murphy and Jocelyn Murphy

DEFENDENTS MOTION TO STRIKE PLAINTIFF'S COMPLAINT - 8

Footnote 1:
Index of use of derivative of "flip" referenced in order of paragraph (p1)

p1  "purchase new issue municipal bonds and quickly re-sell or "flip" those bonds"
    "to flip new issue bonds"
P2  "quickly sold or flipped"
P3  "RMR's fraudulent flipping business model"
p5  "operated predominantly as flippers"
p6  section C: "Deceptive means to conceal flipping"
            "early trading to look for early signs of flipping"
            "effort to avoid detection for their flipping"
            "disguise their subsequent sale or flip"
p13 "RMR's primary activity is to buy and quickly re-sell or flip"
p15 "18 years of industry experience before he began flipping bonds for RMR"
p16 "7 years of industry experience before he began flipping bonds for RMR
p18 "19 years of industry experience before he began flipping bonds for RMR
p19 "15 years of industry experience before he began flipping bonds for RMR
p20 "12 years of industry experience before he began flipping bonds for RMR
p21 "2 years of industry experience before he began flipping bonds for RMR
p22 "20 years of industry experience before he began flipping bonds for RMR
p23 "8 years of industry experience before he began flipping bonds for RMR
p24 "6 years of industry experience before he began flipping bonds for RMR
p25 "16 years of industry experience before he began flipping bonds for RMR
p31 "RMR could purchase and flip to broker dealer"
p32 "independent entities rather than flippers working on behalf"
p39 "allotment of bonds RMR was able to flip at a profit"
P42 "on behalf of RMR in order to flip these securities"
p51 "concealing the re-sell or flip of new issue bonds"
p55 "RMR, which was engaged in flipping securities to"
p57 "avoid being flagged by underwriters as flippers"
    "avoid allocating bonds to flippers"
    "if an underwriter became aware that a defendant was a flipper"
    "avoid selling bonds to flippers"
iii "Steps to disguise flipping of new issue bonds"
p58 "issuers often review early trading to look for flippers"
    "issuers, in particular, may attempt to indentify flipping"
    "who instead flipped the bonds to a pre-arranged buyer"
p59 "detect flipping activity"
    "One hallmark of flipping is if"
    "a typical flipper commission"
    "issuers may also be able to identify flipping"
    "indicate that the bonds had been sold to a flipper"
p60 Section C: "help disguise their flipping"
p61 "hide their flipping"
    "that they flipped bonds obtained"
    "Defendants to continue flipping bonds"

DEFENDENTS MOTION TO STRIKE PLAINTIFF'S COMPLAINT - 9

| | | |
|---|---|---|
| | p64 | ""by hiding his flipping of new issues"" |
| | p67 | "by hiding his flipping of new issues" |
| | | "after the Oceanside flip" |
| | p70 | "by hiding his flipping of new issues" |
| | p71 | " also hid his flipping of new issues" |
| | p74 | "by hiding his flipping of new issues" |
| | p77 | "by hiding his flipping of new issues" |
| | p80 | "by hiding his flipping of new issues" |
| | p84 | "by hiding his flipping of new issues" |
| | p86 | " intended to flip any bonds" |
| | p92 | "by hiding his flipping of new issues" |
| | p95 | "by hiding his flipping of new issues" |
| | p100 | "disguise their flipping" |
| | p101 | "which they later flipped" |
| | p102 | a "obtained allotment of bonds flipped by" |
| | | b. before flipping them, bond flipped by |
| | | c "before flipping", obtained allotment of bonds flipped |
| | p104 | "when they flipped bonds irrespective" |
| | | "had they not been flipped" |

                                                                  62 incidences of use of word.

Footnote 2- Copy of SEC 2018-153

SEC.gov | SEC Files Charges in Municipal Bond "Flipping" and Kickba...    https://www.sec.gov/news/press-release/2018-153

## Press Release

# SEC Files Charges in Municipal Bond "Flipping" and Kickback Schemes

**FOR IMMEDIATE RELEASE**
**2018-153**

*Washington D.C., Aug. 14, 2018* — The Securities and Exchange Commission today charged two firms and 18 individuals in a scheme to improperly divert new issue municipal bonds to broker-dealers at the expense of retail investors. According to the SEC's complaint, the defendants – known in the industry as "flippers" – purchased new issue municipal bonds, often by posing as retail investors to gain priority in bond allocations. The defendants then "flipped" the bonds to broker-dealers for a fee. The SEC also charged a municipal underwriter for accepting kickbacks from one of the flippers.

The SEC alleges that from at least 2009 to 2016, Core Performance Management LLC, RMR Asset Management Co., their principals, and certain of their associates, misrepresented their identities to gain priority in new issue municipal bond allocations. Municipal issuers typically require underwriters to give retail investor orders the highest priority when allocating new issue bonds, particularly retail investors within the municipal issuer's jurisdiction. According to the SEC's complaint, these defendants used fictitious business names, falsely linked their orders to ZIP codes within the issuer's jurisdiction, and split orders among dozens of accounts. After acquiring the bonds, the SEC alleges that the defendants quickly resold them to broker-dealers, typically for a fixed, pre-arranged commission, and often sought to hide the flipping activity from issuers and underwriters by manipulating sales tickets.

"More than a dozen of the individuals charged today are alleged to have engaged in plainly deceptive conduct," said Stephanie Avakian, Co-Director of the Enforcement Division. "We are committed to investigating and charging individuals, especially where, as here, the alleged misconduct by many of these industry professionals harmed retail investors."

"By improperly placing retail orders on behalf of broker-dealers, we allege the flippers prevented true retail investors from receiving priority in municipal bond offerings," said LeeAnn G. Gaunt, Chief of the Division of Enforcement's Public Finance Abuse Unit. "We are continuing our investigation to determine whether other market professionals had a role in these improper practices."

DEFENDENTS MOTION TO STRIKE PLAINTIFF'S COMPLAINT - 11