1   Richard Gounaud
    9 Cliffwood Road
2   Chester, NJ 07930
    908-879-3875
3   rgounaud@gmail.com



4

5

6

7           **UNITED STATES DISTRICT COURT**
            **SOUTHERN DISTRICT OF CALIFORNIA**
8

9

    SECURITIES AND EXCHANGE COMMISSION          Civil Case No: '18CV1895 AJB LL
10
                    Plaintiff,
11
    vs.                                          **DEFENDANTS REPLY TO THE**
12                                               **PLAINTIFF'S OPPOSITION TO**
    RMR ASSET MANAGEMENT COMPANY, ET AL.,        **DEFENDANTS' MOTION TO STRIKE**
13                                               **PLAINTIFF'S COMPLAINT**
                Richard C. Gounaud - Defendant
14                                               **DATE: JANUARY 31, 2019**
                                                 **TIME: 2:00 P.M.**
15                                               **COURTROOM: 4A**
                                                 **JUDGE: HON. ANTHONY J. BATTAGLIA**
16                                               **MAGISTRATE: HON. LINDA LOPEZ**

17

18

19

20

21

22

23

24

25

26

27

28   REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDENTS MOTION TO STRIKE PLAINTIFF'S
     COMPLAINT - 1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  GENERAL

As a Defendant acting Pro Se this Defendant cannot compete with a plaintiff, funded by the U.S. Tax Payers, in doing the research that the court may expect or demand. The Defendant has done the best he can and will rely on the Judge in this case to have sufficient knowledge to find and rule on the truth.

There is no question that the terms: flip, flipping, flipper, flipped and other derivatives of flip ( "flip words" ) when used in the context they were used, are derogatory.  There is also no question that the Plaintiff did not need to use the "flip words" to adequately file his case, he shows us this in his own words and actions.  There is no question that the plaintiffs complaint should have been in ordinary and concise language and it was not.  There is no question that the plaintiff purposely used the "flip words" 62 times in their complaint, and in a way to prejudice the Defendant and inflame the reader. Accordingly the Motion to Strike or Dismiss should be ruled on favorably for the Defendant.

## II. REPLY TO OPPOSITION

1.  The "Rule 12(f)" standard has been met by the defendant.  The "flip words" terms are immaterial to the complaint of being an unregistered broker dealer. The Plaintiff states this in his own Opposition brief .  The terms  "flip words"  are redundant.  The "flip words"  are impertinent. The terms associated with the  "flip words"  are and were  used solely to be scandalous as shown in the sheer number of its uses.  Simply put the "flip words" add nothing to the plaintiffs case but to malign and intentional harm the Defendant in front of the jury.

2.  While the plaintiff states that there is case law where the word "flip" was used,  never was there a case where the "flip words" or any other derogatory term was used 62 times and in such a manner as to inflame and prejudice the reader. In fact, in the cases mentioned by the Plaintiff  where the "flip word" was used, it was used 1 or 2 times and usually in a very subtle context, not in the inflammatory way that  Plaintiff uses. The "flip words" in the cases mentioned were regarding IPO's, not the bond market.  "Flipping" as described by the plaintiff is not illegal or a violation of any law, was not necessary

to describe the case (multiple "ordinary terms" alternatives are available) so the court must ask, why did the Plaintiff find it was necessary to use it 62 times if not purely to inflame the reader or to send some message to the investing community regarding buying and selling quickly.  "Flipping" is a negative term and a highly prejudicial and inflammatory term.  Many potential juror's think that it was the cause of the 2008 crash in the real estate market, so the public regards it as negative. The plaintiff freely acknowledges its use in the real estate market so they must acknowledge the fact that it is a derogatory term in a market that caused the biggest financial crash since the Depression.  Any idea that there is no case law is absurd, early in this countries history legal cases are riddled with inflammatory terms, of all types, all of which at sometime were never questioned when used in legal complaints at that time, but if used now, the writer of the complaint would receive the ire of the court and perhaps a call for sanctions. It's unquestionable that the "flip words" are derogatory, and were used solely in a derogatory manner to impugn the Defendants professional and moral character.  The Defendant is not being tried as a "flipper"  but will be forced to defend against the negative stigma, obviously the goal of the Plaintiff.

3.  There is no doubt that the "flip words" are viewed negatively and the facts are such that the Plaintiff and the Court cannot establish that the "flip words" as they are used in the complaint are not inflammatory or scandalous. Last I checked the Plaintiff is charged with proving his case before the defendant replies. Since they cannot establish that they are not negative, since they are not required for the complaint to be properly filed, they should not be in the complaint.  As previously stated above there are no  notable cases referenced by the Plaintiff or existing in case law where a single  inflammatory concept such as the "flip words" were used 62 times, which makes this a unique situation for the Court to rule on.  There is no comparable case law to be applied.

4.  Regarding: FOOTNOTES: The Defendant in its Motion To Strike has mentioned how the "flip word" are not legal definitions and therefore there is no requirement that they be included in the complaint and that they provide no additional context as to the actual complaint of  acting as a unregistered broker/dealer other than to malign and inflame. The Plaintiff's Opposition relies on the following footnotes to define and justify the "flip words" simply because they are the only places where the words exist and are in no legal dictionaries. Further the Plaintiff suggest that "some securities investors flip bonds" and then provides a reference to stock IPOs and houses not bonds: Footnote 1. |See, e.g., https://www.investopedial.com/terms/f/flipping.asp . Footnote 1 cites the website Investopedia as a source of one definition of "Flipping". Investopedia is a content driven website that relies on contributors

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDENTS MOTION TO STRIKE PLAINTIFF'S COMPLAINT - 3

and unknown 3rd parties to fill out its content.  Investopedia in their *"terms of use"* clearly states the following:

"PLEASE NOTE: Investopedia does not provide tax, accounting, legal, investment, or financial services. The information available through Investopedia's AI Service is provided by third parties and solely for informational purposes on an "as is" basis at user's sole risk. The information is not meant to be, and should not be construed as advice or used for investment, financial planning, legal, accounting, or tax purposes. Investopedia makes no guarantees as to the accurateness, quality, or completeness of the information and Investopedia shall not be responsible or liable for any errors, omissions, inaccuracies in the information or for any user's reliance on the information. User is solely responsible for verifying the information as being appropriate for user's personal use, including without limitation, seeking the advice of a qualified professional regarding any specific financial, legal, accounting, or tax questions a user may have. While Investopedia may edit questions provided by users for grammar, punctuation, profanity, and question title length, Investopedia is not involved in the questions and answers between advisors and users, does not endorse any particular financial, legal, accounting, or tax professionals that provide answers via the AI Service, and is not responsible for any claims made by any advisor. Investopedia is not endorsed by or affiliated with any state/provincial/territorial bar association or other legal or accounting membership organization or association, tax authorities, or agencies or associations, or the Financial Industry Regulatory Authority (FINRA) in the U.S., the Investment Industry Regulatory Organization of Canada (IIROC) or any other financial regulatory authority, agency, or association. In fact some information in this site may or may note be provided by users and not guaranteed to be accurate by Investopedia."

The Plaintiff then goes on to reference: https://financial-dictionary.thefreedictionary.com/Flipping definition of "flipping" as a reference to flipping stocks, houses and not to flipping bonds.  Again, TheFreeDictionary.com is not an authority on it seems anything other than creating content. TheFreeDictionary.com clearly states on the bottom of each page the following "*All content on this website, including dictionary, thesaurus, literature, geography, and other reference data is for informational purposes only. This information should not be considered complete, up to date, and is not intended to be used in place of a visit, consultation, or advice of a legal, medical, or any other professional.*"  If the Plaintiff wishes to use this reference why did they not tell the court that in the Legal Definitions tab of TheFreeDictionary.com, flipping is not listed as a legal word.

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDENTS MOTION TO STRIKE PLAINTIFF'S COMPLAINT - 4

Neither of these 2 references are legal authorities and are simply content generated websites created to generate ad revenue and the actual definitions are not guaranteed to be accurate. One court writes "to express our disapproval of the IJ's reliance on Wikipedia and to warn against any improper reliance on it or similarly unreliable internet sources in the future." *Bing Shun Li v. Holder*, 400 Fed. Appx. 854, 858 (5th Cir. 2010) and also cited: "We agree with those courts that have found Wikipedia to be an unreliable source of information. *See, e.g., Badasa v. Mukasey*, 540 F.3d 909, 910-11 (8th Cir. 2008)." *Bing Shun Li v. Holder*, 400 Fed. Appx. 854, 857 (5th Cir. 2010)

FOOTNOTE 2:http://www.msrb.org/Glossary/Definition/FLIPPING.aspx. The plaintiff references a page from the Municipal Securities Rulemaking Board's Glossary of Terms, the a definition of "flipping". Again the Plaintiff fails to tell the court the following, which is on page 1 of the Glossary. "The brief definitions included in this glossary are intended for educational purposes only and are not comprehensive or official MSRB definitions. The MSRB Board of Directors does not review or adopt the definitions, which have no legal authority under MSRB rules or any other federal securities laws...." Clearly the MSRB takes no position in the definition and no position as to whether it is derogatory or not.

5. HOUSE FLIPPING

The plaintiff goes on to cite HOUSE FLIPPING as a standard for flipping being well known. While flipping houses may also be known because of celebrity driven TV shows, it's best known as the cause for the real estate crash in 2008. Few people think positively about flipped homes and many think a flipped home is just a pig with fresh lipstick on it and would never buy a flipped house, as noted by the very small overall percentage of homes that are actually flipped. Since the Plaintiff wishes to quote content based websites: https://learn.fundthatflip.com/truth-about-house-flipping a financial funding website writes: "Flipping houses has become synonymous with a lot of bad words." Yahoo Finance, a often used reference site for financial information, states: "House flippers triggered the US housing market crash, not poor subprime borrowers" https://finance.yahoo.com/news/house-flippers-triggered-us-housing-175705459.html which continues to show that the "flip words" is negative and derogatory. How Tales of 'Flippers' Led to a Housing Bubble, https://www.nytimes.com/2017/05/18/upshot/how-tales-of-flippers-led-to-a-housing-bubble.html . One can find thousands of negative articles on the "flip" words, no positive articles other than those generated to sell products to the house flipper. None of the sites listed above could be determined to be anything other than content drive sites and the information listed on

them not guaranteed to be accurate. The "house flipping" example provided by the Plaintiff only shows how negatively "flipping" is thought of by the public.

### 6. "Some Investors Flip Bond"

The plaintiffs cavalier reference that "..some real estate investors "flip" houses, some securities investors "flip" bonds…" is absurd. No average American juror will understand that flipping bonds is not derogatory, not illegal, nor will they not think that there is a negative connotation associated with the "flip" words .

7. In paragraph 7 the Plaintiff attempts to justify its charge against the Defendant by stating: in its Opposition brief the following "…Gounaud's flipping (i.e. buying and quickly selling)….." simply shows the court again that "flipping" was not necessary to the Plaintiff's complaint. In the Plaintiffs own words they add the following: "… (i.e. buying and quickly selling)" why was "flipping" needed at all other than to inflame. Further the plaintiff says that the complaint is based on the following violation "…to effect transactions in, or to induce the purchase or sale of securities". In their own words they show the court exactly how unnecessary the derogatory "flip words" are, "flipping" as they describe it had nothing to do at all with the suggested violation, it was buying and selling that may have created a violation. The Plaintiff continues on, with extreme arrogance, and uses this line "…that his line of work flipping bonds.." just to use this "flip" word. Defendant is an investor and trader was always at risk when he was involved in any transaction. So the comment "..his line of work flipping.." was included in this Opposition brief just to justify the use of the "flip" word, but it indeed shows the arrogance of the Plaintiffs attorneys to further malign the defendant with derogatory comments, they just can't seem to help themselves.   The Plaintiff attempts to state that "flipping" is a the "heart of the matter" is pure malarkey, as the Plaintiff writes in its original complaint that the heart of its case the purchase of bonds during the retail order period when they supposedly should not have, the collusion of some Firms, their Registered Representatives and some of the defendants (Gounaud was not mentioned in this)  and the resale of the bonds to other Registered Representatives whom colluded with some of the defendants. (Gounaud was not mentioned), not the action of quickly buying and selling which is not illegal  Again the Plaintiffs own words prove that the terms have no bearing on the complaint.  It is easy to further established that use of the "flip words" has no bearing on the litigation, and in the Plaintiffs own words, that any buying and selling of securities can be construed to be the work of an un-registered broker-dealer, not just those transactions done quickly. "Flipping" does not define an unregistered broker dealer, in fact

there is no definition of what a broker/dealer is in the Securities Act that suggest the quickness of the action defines a broker/dealer.   This is simply the Plaintiff reaching for reasons to defend their actions as they are reaching to make the defendant a unregistered broker/dealer, simply because it makes their case work.  Use of the "flip words" has NO bearing on a violation of being a unregistered broker/dealer, its use is however, derogatory and inflammatory and therefore should be struck.  Further, the assertion that the Defendant is a "flipper" creates a situation where the defendant has to not only defend the charge of being an "unregistered Broker/Dealer", he also has to deal with the derogatory assertion that he is a "flipper" and somehow remove that sigma from the jury's mind, which puts the Defendant in the danger of unfair prejudice especially since he is not charged with being a "flipper".

8. In the plaintiffs paragraph 8 (marked as 7 on the Plaintiffs Opposition) the Plaintiff suggest that this case cannot be dismissed.  The egregiousness of the Plaintiff's complaint calls for a full dismissal because the complaint is unanswerable as written and  the complaint fails to state a claim upon which relief can be granted.  Not only do the use of the "flip words" invade and poison every section of the complaint, but is a direct assault on the defendant's character and is not defendable because it is not illegal.  This is not just a single little insertion of the "flip words" for some sort of clarification, it is 62 insertions for the sole purpose of  inflaming the reader and demeaning the defendant.  The fact that the Plaintiff continues to reach for reasons why their bad behavior should be ignored, creates all the more reason for a dismissal.  The Plaintiff's case has been so poisoned by their own words that as it stands today this case cannot be allowed to move forward.

CONCLUSION

The PLAINTIFF'S OPPOSITION TO DEFENDANT RICHARD C. GOUNAUD'S MOTION TO STRIKE PLAINTIFF'S COMPLAINT clearly provides no new facts in the opposition to the motion. If one was to go through the Plaintiffs case and replace all the "flip words"  with derivatives of "buying and selling quickly" not one part of the Plantiff's case would be jeopardized other than the derogatory tone of the case. The Plaintiff clearly and intentional intended to inflame, prejudice, and demean the defendants with 62 instances of using the "flip" words, after all, it made for good press . 62 instances that clearly were not needed for the Plaintiff to create it's complaint of acting as an unregistered broker dealer or any of the other charges in the complaint.  The Court should either strike these instances in total or actually dismiss this complaint because doing so clearly outweighs the current danger to the defendant of unfair prejudice. The plaintiff clearly had the opportunity and, based on their own words, a clear and

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDENTS MOTION TO STRIKE PLAINTIFF'S COMPLAINT - 7

concise alternative to using the derogatory "flip words" but sought to make a public relations point to the investing community by sensationalizing its complaint.  The use by the Plaintiff of gratuitously inflammatory words, serves no reasonable purpose in making the Plaintiff's case and are therefore immaterial to the case.  Unless the court wishes for future complaints, briefs, and motions to become a battlefield of useless, inflammatory, derogatory language, the court must at very least strike this complaint.  However, since this complaint is so riddled with this inflammatory language it should be dismissed in total.  The plaintiff's attorneys  have brought this action upon themselves, they should have known better.

Respectfully submitted this 28th day of December, 2018.

Richard Gounaud Pro Se

**CERTIFICATE OF SERVICE**
I hereby certify that I transmitted the foregoing documents using the U.S. Postal Service on 12/28/2018 , 2018 and that service on all counsel of record will be accomplished by First Class Mail to:

Nicholas A. Pilgrim
Security and Exchange Commission
100 F Street, NE
Washington, DC 20549

Kevin Guerrero
Security and Exchange Commission
100 F Street, NE
Washington, DC 20549

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDENTS MOTION TO STRIKE PLAINTIFF'S COMPLAINT - 8

1

2  Warren E Greth Jr
   Security and Exchange Commission
3  100 F Street, NE
   Washington, DC 20549
4

5  Cori M. Shepherd
   Security and Exchange Commission
6  100 F Street, NE
   Washington, DC 20549
7

8
   Thomas D. Mauriello
9  Mauriello Law Firm APC
   1230 Columbia Street, Suite 1140
10  San Diego, CA 92101
   Attorney for Michael S. Murphy and Jocelyn Murphy
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
   REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDENTS MOTION TO STRIKE PLAINTIFF'S
   COMPLAINT - 9