JAMES E. SMITH (DC Bar No. 482985)
Email: smithja@sec.gov
CHRISTIAN SCHULTZ (DC Bar No. 485557)
Email: schultzc@sec.gov
KEVIN GUERRERO (AZ Bar No. 023673)
Email: guerrerok@sec.gov
LAURA J. CUNNINGHAM (DC Bar No. 1029465)
Email: cunninghaml@sec.gov
WARREN E. GRETH, JR. (VA Bar No. 72988)
Email: grethw@sec.gov
CORI M. SHEPHERD (DC Bar No. 993503)
Email: shepherdco@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549
Telephone: (202) 551-4740 (Schultz)
Facsimile: (301) 623-1187

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>RMR ASSET MANAGEMENT COMPANY, et al,<br><br>Defendants. | Case No. 3:18-cv-01895-AJB-LL<br><br>**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST RICHARD GOUNAUD, MICHAEL SEAN MURPHY, AND JOCELYN MURPHY**<br><br>Date: July 16, 2020<br>Time: 2:00 p.m.<br>Courtroom: 4A<br>Judge: Hon. Anthony J. Battaglia |

## I.  INTRODUCTION

The SEC's Motion for Summary Judgment established unequivocally that Defendants engaged in illegal trading of new issue municipal bonds and other securities on behalf of former defendants Ralph Riccardi and his company RMR Asset Management Company ("RMR"). Defendants do not contest most of the facts set forth in the SEC's Motion, nor could they when their own words establish their liability, and their few attempts to create material issues of fact lack any substantiation and are without merit. Accordingly, the Court should grant summary judgment on all claims.

Defendants argue that they could not have acted as unregistered brokers because they were "partners" with Riccardi, but offer no evidence to support such contention other than unsupported, conclusory, and self-serving declarations that cannot create a material issue of fact on summary judgment,[1] and cannot rebut Defendants' prior testimony that they were independent contractors of RMR and other documentary evidence in this case.[2] Defendants otherwise argue that they did not "effect transactions" for or receive "transaction-based compensation" from RMR and Riccardi, yet the evidence is clear that they took direction from Riccardi on the securities

---

[1] *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) ("When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact."); *Far Out Products v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (affirming summary judgment where appellant's affidavits were conclusory). The SEC treats Gounaud's *pro se* brief as a declaration of factual assertions.

[2] To the extent Defendants' purport to assert cross-motions for summary judgment, Gounaud Resp. at 1, Murphy Resp. at 1, 3, 25, such requests are untimely and should be stricken. *See Jensen v. BMW of N. America, LLC.*, No. 18-cv-103-WQH-NLS, 2019 WL 2009871, *1 (S.D. Cal. May 7, 2019).

1

transactions at issue, exclusively used RMR capital to effect these transactions, and received monthly commissions from the proceeds in RMR's account for these transactions. Accordingly, the Court should find as a matter of law that Defendants acted as unregistered brokers in violation of Section 15(a)(1) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78o(a)(1).

With respect to the SEC's fraud claim, Ms. Murphy concedes that allocations for new issue municipal securities from issuers in California, Oregon, and elsewhere had to follow the issuers' priority of orders rules, and those priority rules reserved first priority for in-state retail customers. (Murphy Resp. at 12, 23.) She admits to providing her brokers with "erroneous" (*i.e.*, false) zip codes in connection with her successful purchase of new issue municipal securities from those and other issuers. (Murphy Resp. at 3.) She argues, however, that she did not act with scienter because she did not know what her brokers would do with the false zip codes or whether they would make a difference to any bond allocations. She also claims that her false zip codes were not material because there is no evidence they impacted any issuers' decisions to allocate bonds. These arguments are without merit. During her deposition, Ms. Murphy admitted to using Google to identify zip codes in California, Oregon, and other jurisdictions and providing the "Googled" zip codes to her brokers *as they were entering her orders*, and did so *because she knew local zip codes received top priority in the retail order period*. These admissions prove Ms. Murphy's scienter and the materiality of her false zip codes, and the Court should hold as a matter of law that she violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j, and Rule 10b-5, 17 C.F.R. § 240.10b-5.

## II. ARGUMENT

### A. Defendants Acted as Unregistered Brokers When They Engaged in Securities Transactions for RMR and Riccardi.

#### 1. Defendants Were Not Partners With Riccardi.

Section 3(a)(4)(A) of the Exchange Act defines a "broker" as "any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4)(A). Defendants argue that they did not make trades for or on behalf of RMR because they were in "partnership" with Riccardi. (Gounaud Resp. at 4; Murphy Resp. at 7, 9.) *First*, Defendants offer no evidence of such partnerships – not a single document or even the names of such partnerships – other than self-serving statements in declarations they prepared for summary judgment, which cannot create an issue of material fact. *See supra* note 1.[3] *Second*, ample evidence pre-dating this lawsuit shows that Defendant did not consider themselves to be partners of Riccardi but instead considered themselves either self-employed, an independent contractor of RMR, or both.

In 2016, in response to an SEC investigative questionnaire, Gounaud stated that he "worked for himself" and was "associated with Ralph Riccardi," but did not identify

---

[3] Partnerships are creations of state law, *see, e.g., Nelson v. Serowld*, 687 F.2d 278, 282-83 (9th Cir. 1992), and Riccardi and RMR were located in California, while Gounaud lived in New Jersey or Florida and the Murphys lived in Colorado. Defendants are silent as to what state partnership law applies and the Court should not have to scour multiple states' laws to assess their unsubstantiated claim. *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[J]udges are not like pigs, hunting for truffles. . . ."); *cf. Mid-Am. Salt, LLC v. D.J.'s Lawn Serv., Inc.*, 396 F. Supp. 3d 797, 807 (N.D. Ind. 2019)("Judges are not required to sift through the record without direction from counsel and find evidentiary and legal support for contentions tossed out 'like salt strewn on an icy sidewalk,' (pun intended)."))(citations omitted).

any partnership with Riccardi or RMR in response to clear questions asking about such partnerships or other business relationships.  (June __, 2020 Declaration of Christian Schultz ("Schultz Decl.") Ex. 1 at 4, 20 (Qs. 15-16, 35), Ex. 2 at 6, 7-8 (A. 15-16, 35)). Gounaud admitted that RMR gave him an IRS Form 1099, Gounaud Tr. 219:10-21 (Schultz Decl. Ex. 3). 1099 is the tax form for self-employed independent contractors, *see, e.g.*, https://www.fundera.com/blog/1099-vs-w2-employee, whereas Schedule K-1 reports partnership distributions, *see* https://www.irs.gov/pub/irs-pdf/f1065sk1.pdf.

Mr. and Mrs. Murphy responded similarly to the SEC's investigative questionnaires, listing their employment status as "self employed" and failing to identify any partnership with Riccardi or RMR.  Schultz Decl. Ex. 4 at 4, 10 (M. Murphy, Qs. 15-16, 35), Schultz Decl. Ex. 5 at pp. 4, 10 (J. Murphy, Qs. 15-16, 35). Ms. Murphy also testified that she listed "self-employed" on her 2010-2016 tax returns and admitted that neither she nor Mr. Murphy ever received an IRS Schedule K-1 from Riccardi or RMR.  J. Murphy Tr. at 56:11-13; 79:10-80:14 (Schultz Decl. Ex. 6).  In September 2016, nearly two years before the SEC filed this action and while they were still trading securities on behalf of RMR, Mr. and Mrs. Murphy both testified that they were independent contractors for RMR.  *See* M. Murphy Inv. Tr. at 14:23-15:1 ("I'm an independent contractor with RMR.") (Schultz Decl. Ex. 7); J. Murphy Inv. Tr. at 26:9-12 (I'm an independent contractor, yes. . . . For RMR Group.") (Schultz Decl. Ex. 16).[4]

---

[4] The Court should ignore the Murphy defendants' claim that their former counsel advised them to falsely state in sworn investigative testimony that they were independent contractors for RMR, (Dkt. 123-1 ¶¶ 17-18, Dkt. 123-2 ¶¶ 20-21), when they offer no evidence of such advice other than their own unsupported declarations

Finally, Riccardi specifically testified that he never "perceived [the Defendants] as *anything other than independent contractors*." Dkt. 115-8 at 167:6-8.

Given this overwhelming evidence, it is clear that no Defendant had a partnership with RMR or Riccardi and the Court should disregard this unsupported story.

### 2. Defendants Effected Trading Orders from Riccardi Using RMR's Capital.

Defendants contend that their trading activity was independent from RMR and thus cannot support a violation of Section 15(a) because they were not trading on behalf of RMR.[5] Although the Murphy defendants admit that RMR provided the capital for the trading activity, they assert that other than money, RMR offered little more than administrative services. (Murphy Resp. at 10-11.) Gounaud admits his trading activity

---

(i.e., they offer no contemporaneous communications with or declarations from their former counsel). *See, e.g.*, *United States v. Conforte*, 624 F.2d 869, 878 (9th Cir. 1980) (reliance on counsel argument rejected because no testimony offered that such advice was ever given); *United States v. Olmo*, 663 F. Supp. 102, 104-05 (N.D. Cal. 1987), *aff'd*, 875 F.2d 319 (9th Cir. 1989) (looking to testimony of former counsel to assess defendant's claim of perjured testimony based on advice of former counsel).

[5] The Murphy defendants ask the Court to invoke the rule of lenity regarding the definition of broker – "any person engaged in the business of effecting transactions in securities for the account of others" – because one district court wrote that this language was "somewhat opaque." Murphy Resp. at 14-16 (quoting *SEC v. M & A W., Inc.*, No. C-01-3376 VRW, 2005 WL 1514101, at *1 (N.D. Cal. June 20, 2005)). The rule of lenity applies to criminal and punitive statutes only when traditional canons of statutory construction leave ambiguity, *see SEC v. Bardman*, 231 F. Supp. 3d 442, 447 n.6 (N.D. Cal. 2017), and the statutory definition of broker is neither criminal nor punitive. The Murphy defendants offer nothing to support their ambiguity argument other than two words from an inapposite district court case, and as the SEC discussed in its Motion, Dkt. 115-1 at 13, courts routinely look to the *Hansen* factors to assess whether a defendant acted as a broker. *SEC v. Feng*, 935 F.3d 721, 732 (9th Cir. 2019) (*citing SEC v. Hansen*, No. 83 Civ. 3692, 1984 WL 2413, at *10 (S.D.N.Y. Apr. 6, 1984).

was cleared and settled in RMR's prime brokerage account but asserts that a portion of the capital in RMR's prime brokerage account belonged to him. (Gounaud Resp. at 4.) He admitted previously, however, that he received compensation via RMR's prime brokerage account only if trades created profits in a given time period. Dkt. 115-11 at 190:19-23. Jocelyn Murphy also admitted in her investigative testimony that she had never traded municipal securities before working with RMR, and Riccardi trained her at his office on how to trade for RMR. J. Murphy Inv. Tr. at 44-46 (Schultz Decl. Ex. 16).

Contrary to their claims, ample evidence shows that Defendants – each of whom previously worked at broker-dealers buying and selling securities for clients – traded on RMR's behalf, at RMR's direction, and using RMR's capital. Indeed, numerous deposition exhibits show Riccardi and RMR directing Defendants to purchase securities, Schultz Decl. Exs. 8-11; Dkt. 115-9 at 90:17-91:5 (discussing RMR directing Ms. Murphy to buy bonds), and others show that Defendants obtained securities pursuant to RMR's requests. Schultz Decl. Exs. 12-15. This undisputed evidence shows RMR directed Defendants to purchase securities on its behalf using its capital.[6]

### 3. Defendants' Claims that their Compensation was not Transaction Based are Erroneous.

Defendants fallaciously contend that their respective compensation was not transaction based. (Gounaud Resp. at 10-12; J. Murphy Decl. ¶ 15 (Dkt. 123-1); M. Murphy Decl. ¶ 17 (Dkt. 123-2).) Exhibits T, V, and W offered with the SEC's Motion

---

[6] Ms. Murphy claims Exhibit J evidences her rejection of RMR's request to obtain bonds. Dkt. 123-1 ¶ 10. However, Exhibit J shows Riccardi directing Mr. Murphy to put in the order because Riccardi could not reach Ms. Murphy, Dkt. 115-3, and Exhibit L shows that Mr. Murphy actually put in the order. Dkt. 115-15.

show trades conducted by Mr. Murphy, Ms. Murphy, and Gounaud, respectively, (Dkts. 115-23, 115-25, 115-26), and these trades were on behalf of RMR, using RMR's capital, and conducted through RMR's prime brokerage account. Riccardi Tr. (Dkt. 115-8) at 114:13-14; 129:20-22; 148:3-6. Moreover, each Defendant admitted that if they failed to complete a profitable trade in a measuring time period, they received no payments for this activity. Dkt. 115-9 at 186:9-25 (J. Murphy); Dkt. 115-10 at 139:10-14 (M. Murphy); Dkt. 115-11 at 190:19-23 (Gounaud). Thus, Defendants' compensation was based on making profitable transactions and was undoubtedly "transaction-based compensation." *See, e.g., SEC v. StratoComm Corp.*, 2 F. Supp. 3d 240, 263 (N.D.N.Y. 2014) (bonus based on amount raised selling securities to investors is transaction-based compensation); *SEC v. Benger*, 697 F. Supp. 2d 932, 945 (N.D. Ill. 2010) (receiving compensation for "consummation" of securities transactions is transaction-based compensation).[7]

**B.  Jocelyn Murphy Committed Fraud When She Submitted False Zip Codes to Obtain Bonds on a Retail Priority Basis.**

**1.  Jocelyn Murphy Intentionally Submitted False Zip Codes So Her Orders Would Receive the Highest Priority.**

Jocelyn Murphy argues she cannot be liable for fraud because her brokers knew her true Colorado zip code when she provided them with false zip codes from California, Oregon, and other jurisdictions, and she did not know whether the false zip

---

[7] Gounaud argues that the Court should view "transaction-based compensation" based on as "agreed commission rate," which he suggests should be 1%, and that this shows his compensation wasn't transaction-based. (Gounaud Resp. at 10-11.) There is no evidence that Riccardi and Gounaud agreed to a 1% compensation rate and the Court should dismiss this illogical and unsupported argument.

7

codes would affect whether or not she received an allocation of bonds from issuers in those jurisdictions. (Murphy Resp. at 23, 25.)  These claims are without merit.

Scienter under Section 10(b) and Rule 10b-5 is defined as a "mental state embracing intent to deceive, manipulate or defraud," *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976), and may be established by a showing of either actual knowledge or recklessness.  *Gebhart v. SEC*, 595 F.3d 1034, 1040 (9th Cir. 2010).  In the present case, Ms. Murphy admitted that she provided her brokers with zip codes from California, Oregon, and other jurisdictions that she obtained by "doing a search on Google to find [local] ZIP codes."  J. Murphy Tr. at 116:17-22 (Schultz Decl. Ex. 6); J. Murphy Tr. (Dkt. 115-9) at 128:3-9; 134:16-135:15.  Ms. Murphy further admitted that she did not live in any of the zip codes that she provided to her brokers for orders on bonds from those jurisdictions, *id*. at 97:13-98:11; 125:5-13; 130:21-131:4; 158:9-23, and documents show that she provided these false zip codes *as her brokers were submitting her orders*. *See, e.g.*, Dkts. 115.27, 115.29, 115.32.  Ms. Murphy was equally clear that she provided the false zip codes because she knew that her orders would not receive top priority if she provided her true Colorado zip code.

> **Q.** So if you want to be first in line based on the priority of orders and the definition of retail order for this California bond deal, you had to submit a ZIP code; correct?
>
> **A.** Correct.
>
> **Q.** And that would be a California ZIP code; correct?
>
> **A.** Yes. Correct.
>
> **Q.** If you submitted a Denver ZIP code, do you believe you would be considered California retail?
>
> **A.** No.

Dkt. 115-9 at 155:16-156:5 (objections omitted); *id*. at 100:2-5 (cannot get top priority without Oregon zip code); 159:2-12 (same re California); 163:23-164:3 (same).[8]

Regardless of Ms. Murphy's unsubstantiated claim that her brokers knew her correct zip code, whether from her account records with their firms or through their own personal knowledge, her testimony demonstrates that she acted with actual knowledge when she provided her brokers with false zip codes so that her orders would be considered in the local retail allocation from issuers in jurisdictions where she admitted that she did not live. This demonstrates Ms. Murphy's intent to deceive issuers and to manipulate bond allocations in her favor, and is unrebutted evidence of her scienter.

### 2. Jocelyn Murphy Knew Her False Zip Codes Were Material to the Bond Allocations She Received.

Ms. Murphy argues that her false zip codes were not material because there is no evidence that anyone was deceived by them or that they affected any other investor's bond allocation. She asserts that issuers could waive the priority of orders rules if they wanted without offering any evidence that any issuers actually did so, and concludes that the false zip codes did not alter the total mix of information available to issuers.

It is well-established that a fact is material if there is a substantial likelihood that

---

[8] Ms. Murphy argues that the SEC has offered no proof that her false zip codes were transmitted to issuers, that "any issuer was deceived by the false zip codes," or that any investors were actually harmed. (Murphy Resp. at 23). While evidence shows the fallacy of these claims, Dkts. 115.27-115.32, it is well-established that the SEC need not prove reliance or actual harm. *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1364 (9th Cir. 1993) (SEC not required to prove reliance); *Graham v. SEC*, 222 F.3d 994, 1002 (D.C. Cir. 2000) (SEC not required to prove actual harm to investors) (citing *United States v. Naftalin*, 441 U.S. 768 (1979)); *SEC v. Zouvas*, No. 3:16-cv-0998-CAB-DHB, 2016 WL 6834028, at *10 (S.D. Cal. Nov. 21, 2016) (same) (citing *Naftalin*).

9

it would be considered important to a person buying or selling securities.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988); *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1092 (9th Cir. 2010).  Ms. Murphy acknowledges in her brief , as she must, that "MSRB Rules G-11 and G-17 require underwriters to allocate the new issue bonds in accordance with the priorities set by the issuer *and to make sure any given orders submitted during a retail order period meet the issuer's conditions*."  (Murphy Resp. at 23 (emphasis added).)  She also admits that the first priority on the bonds that she sought and obtained from California and Oregon were "California Retail" and "Oregon Retail," (*id*. at 12), and she admitted in her deposition that she would not have qualified for in-state retail priority in those jurisdictions but for her submission of false zip codes.  J. Murphy Tr. (Dkt. 115-9) at 99:23-100:5 (acknowledging she couldn't be in the first order period without an Oregon zip code); 128:10-17 (same re Puerto Rico), 163:18-164:3 (same re California).  Ms. Murphy's own words, and the unrebutted expert testimony of Nathaniel Singer, Dkt. 115-4 at 17, establish that local zip codes were so obviously important to issuers of new issue municipal bonds that reasonable minds cannot differ on the materiality of the false zip codes that she provided in order to obtain bonds from those issuers.  *See. e.g., SEC v. Alliance Leasing Corp.*, 28 Fed. Appx. 648, 652 (9th Cir. 2002); *SEC v. Murphy*, 626 F.2d 633, 653 (9th Cir. 1980).

### III.     CONCLUSION

The Court should hold as a matter of law that Defendants acted as unregistered brokers when they effected securities transactions for RMR, and Jocelyn Murphy committed fraud when she used false zip codes to obtain new issue municipal bonds.

| | |
|---|---|
| Dated: June 15, 2020 | Respectfully submitted,<br><br>*/s/ Christian Schultz*<br>CHRISTIAN SCHULTZ<br>James E. Smith<br>Laura J. Cunningham<br>Warren Greth<br>Cori M. Shepherd<br>Kevin Guerrero<br>Attorneys for Plaintiff<br>Securities and Exchange Commission |

# CERTIFICATE OF SERVICE

I hereby certify that, on June 18, 2020, I served the foregoing reply brief on the individuals identified on the service list provided below by the following means:

☐ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I or someone on my behalf deposited in a facility regularly maintained by UPS or delivered to a UPS courier.

☐ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: June __, 2020       */s/ Christian Schultz*
                          Christian Schultz

**SEC v. RMR ASSET MANAGEMENT COMPANY, et al.**
United States District Court—Southern District of California
Case No. 3:18-cv-01895-AJB-LL

**SERVICE LIST**

Robert Knuts, Esq. **(served by efile only)**
Sher Tremonte LLP
90 Broad Street, 23rd Floor
New York, NY 10004
Email:  rknuts@shertremonte.com
*Counsel for Defendants Jocelyn M. Murphy and Michael S. Murphy*

Thomas D. Mauriello, Esq. **(served by efile only)**
Mauriello Law Firm, APC
1230 Columbia Street, Suite 1140
San Diego, CA 92101
Email:  tomm@maurlaw.com
*Counsel for Defendants Jocelyn M. Murphy and Michael S. Murphy*

Richard Gounaud **(served by efile only)**
9 Cliffwood Road
Chester, NJ 07930
*Defendant Pro Se*