ROBERT KNUTS
rknuts@shertremonte.com

Sher Tremonte LLP
90 Broad Street, 23rd Floor
New York, NY 10004
(212) 202-2638

Thomas D. Mauriello (SBN 144811)
MAURIELLO LAW FIRM, APC
1230 Columbia Street, Suite 1140
San Diego, CA 92101
Tel: (619) 940-1606
Fax: (949) 606-9690
Email: tomm@maurlaw.com

*Co-Counsel for Defendants Jocelyn M.
and Michael S. Murphy*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> RMR ASSET MANAGEMENT COMPANY, et al., <br><br> Defendants. | Case Number: 3:18-cv-01895-AJB-LL <br><br> MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO TO PLAINTIFF'S MOTION FOR REMEDIES ORDER AND ENTRY OF FINAL JUDGMENT <br><br> Date:  December 10, 2020 <br> Time: 2:00 pm <br> Ctrm: 4A <br> Judge: Hon. Anthony J. Battaglia |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION ................................................................................ 1

ARGUMENT ...................................................................................... 2

   I.    The Court Should Not Issue Any Injunctive Remedies
       Against Either Sean Murphy Or Jocelyn Murphy .............................. 2

       A.    Statutory Authority of the SEC and Equitable Power of
          this Court ...................................................................... 2

       B.    The SEC's Request For Permanent Injunctions Against
          Future  Violations of the Federal Securities Laws Must Be
          Denied ........................................................................... 5

              Scienter ....................................................................... 8

              Isolated or Recurrent Nature of Infraction ...................... 9

              Likelihood of Recurrence Based on Professional
              Occupation ................................................................. 10

              Assurances Against Future Violations .......................... 11

       C.    The SEC's Request For A "Specific Conduct" Injunction
          Must Be Denied ............................................................ 13

  II.    Any Financial Penalties Imposed By The Court Against
       Sean Murphy and Jocelyn Murphy Should Be Based
       Upon Gross Pecuniary Gain Received By Defendants ..................... 15

CONCLUSION .................................................................................. 21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Austin v. United States*,
      509 U.S. 602, 113 S. Ct. 2801, 125 L.Ed.2d 488 (1993) ............................. 19

*Columbia Pictures Industries, Inc. v. Fung*,
      710 F.3d 1020 (9th Cir. 2013) ...................................................................... 7

*Del Webb Communities, Inc. v. Patington*,
      652 F.3d 1145 (9th Cir. 2011) ...................................................................... 7

*Exch. Comm'n v. Gentile*,
      939 F.3d 549 (3d Cir. 2019) ............................................................... 4, 5, 13

*FTC v. EDebitPay, LLC*,
      695 F.3d 938 (9th Cir. 2012) ...................................................................... 6

*Great-West Life & Annuity Ins. Co. v. Knudson*,
      534 U.S. 204 (2002) .................................................................................... 3

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
      527 U.S. 308 (1999) ................................................................................. 3, 4

*Hecht Co. v. Bowles*,
      321 U.S. 321 (1944) ................................................................................. 4, 5

*Liu v. SEC*,
      140 S. Ct. 1936 (2020) ................................................................................ 3

*Mertens v. Hewitt Associates*,
      508 U.S. 248 (1993) ................................................................................. 3, 4

*SEC v. All. Transcription Servs., Inc.*,
      No. CV 08-1464-PHX-NVW, 2010 WL 483792 (D. Ariz. Feb. 8, 2010) ... 16

*SEC v. Brookstreet Sec. Corp.*,
      No. 09-CV-1431 (DOC) (ANX), 2014 WL 12689999 (C.D. Cal. Dec. 18, 2014) ......................................................................................................... 18

ii

*SEC v. Brookstreet Securities Corporation*,
   664 Fed.Appx. 654 (9th Cir. 2016) ............................................................ 19

*SEC v. CMKM Diamonds, Inc.*,
   635 F. Supp. 2d 1185 (D. Nev. 2009) ......................................................... 18

*SEC v. Fehn*,
   97 F.3d 1276 (9th Cir. 1996) ....................................................................... 8

*SEC v. Goble*,
   682 F.3d 932 (11th Cir. 2012) ..................................................................... 6

*SEC v. Graham*,
   823 F.3d 1357 (11th Cir. 2016) ................................................................... 6

*SEC v. GTF Enterprises, Inc.*,
   No. 10-CV-4258 (RA), 2015 WL 728159 (S.D.N.Y. Feb. 19, 2015).......... 17

*SEC v. Interlink Data Network of Los Angeles, Inc.*,
   No. CIV. A. 93-3073 R, 1993 WL 603274 (C.D. Cal. Nov. 15, 1993) ....... 17

*SEC v. Invest Better 2001*,
   No. 01-CV-11427 (BSJ), 2005 WL 2385452 (S.D.N.Y. May 4, 2005)....... 17

*SEC v. Jasper*,
   883 F. Supp. 2d 915 (N.D. Cal. 2010) ....................................................... 20

*SEC v. Manor Nursing Ctrs., Inc.*,
   458 F.2d 1082 (2d Cir. 1972) ....................................................................... 5

*SEC v. Mizrahi*,
   2020 WL 6114913 (C.D. Cal. 2020) ........................................................... 20

*SEC v. Murphy*,
   626 F.2d 633 (9th Cir. 1980) ....................................................................... 8

*SEC v. One Wall St., Inc.*,
   2008 WL 5082294 (E.D.N.Y. Nov. 26, 2008) ........................................... 17

*U.S. v. Bajakajian*,
   524 U.S. 321 (1998) ................................................................................... 19

*United States v. Oregon State Med. Soc.*,
    343 U.S. 326, 72 S. Ct. 690, 96 L. Ed. 978 (1952) ........................................ 4

*Watson v. Sutherland*,
    5 Wall. 74 (1867) ........................................................................................ 4

*Weinberger v. Romero-Barcelo*,
    465 U.S. 305 (1982) .................................................................................... 4


**Statutes**

15 U.S.C. §77t ....................................................................................... 2, 16

15 U.S.C. §78u .............................................................................. 2, 3, 14, 18


**Rules**

Rule 65(d) of the Federal Rules of Civil Procedure ........................................... 6, 7

## **INTRODUCTION**

In its Remedies Motion, the SEC asks this Court to impose grossly disproportionate and unjustified sanctions upon defendants Michael Sean Murphy ("Sean Murphy") and Jocelyn M. Murphy ("Jocelyn Murphy"). The more than $2.2 million in financial penalties sought by the SEC would inflict permanent catastrophic financial harm on the Murphy family while utterly ignoring the fact that, according to the SEC's own submissions in this matter, the monies received by Sean and Jocelyn Murphy from the transactions identified as illegal by the SEC amounted to less than $35,000. As described further below, while the applicable Federal statutes concerning financial penalties for securities violations allow for penalties in excess of monies received by the alleged wrongdoers, there is simply no legal precedent or sound reason in the exercise of the Court's discretion to impose the financial penalties requested by the SEC.

Similarly, the SEC's request for injunctive relief should be denied because the evidence shows that there is <u>no</u> reasonable likelihood that either Sean Murphy or Jocelyn Murphy will ever again violate any provision of the Federal securities laws. Nor is there any legal or factual basis that justifies the "specific conduct" injunction requested by the SEC, which seeks to impose a form of "shaming" on the defendants in connection with lawful activities, without seeking to prevent unlawful conduct or achieve any benefit for U.S. investors.

1

# **ARGUMENT**

**I.    The Court Should Not Issue Any Injunctive Remedies
Against Either Sean Murphy Or Jocelyn Murphy**

      A.    <u>Statutory Authority of the SEC and Equitable Power of this Court</u>

Section 20(b) of the Securities Act of 1933 ("Securities Act") provides, in relevant part:

> Whenever it shall appear to the Commission that *any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this subchapter*, or of any rule or regulation prescribed under authority thereof, the Commission may, in its discretion, bring an action in any district court of the United States, or United States court of any Territory, *to enjoin such acts or practices*, and upon a proper showing, a permanent or temporary injunction or restraining order shall be granted without bond.

15 U.S.C. §77t(b) (emphasis added). Similarly, Section 21(d)(1) of the Securities Exchange Act of 1934 ("Exchange Act") provides, in relevant part:

> Whenever it shall appear to the Commission that *any person is engaged or is about to engage in acts or practices constituting a violation of any provision of this chapter*, the rules or regulations thereunder, . . . ., it may in its discretion bring an action . . . *to enjoin such acts or practices*, and upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond.

15 U.S.C. §78u(d)(1) (emphasis added). Finally, Section 21(d)(5) of the Exchange Act authorizes the Commission to seek "any equitable relief that may be appropriate or necessary *for the benefit of investors*." 15 U.S.C. §78u(d)(5) (emphasis added).

In *Liu v. SEC*, the United States Supreme Court noted: "Congress did not define what falls under the umbrella of 'equitable relief[,]' [and t]hus, courts have had to consider which remedies the SEC may impose as part of its § 78u(d)(5) powers." 140 S. Ct. 1936, 1940 (2020). The Supreme Court further declared:

> In interpreting statutes like § 78u(d)(5) that provide for "equitable relief," [a court] analyzes whether a particular remedy falls into "those categories of relief that were *typically* available in equity."

*Id.* at 1942 (quoting *Mertens v. Hewitt Associates*, 508 U.S. 248, 256 (1993)); *see also id.* ("The 'basic contours of the term are well known' and can be discerned by consulting works on equity jurisprudence." (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 217 (2002))).

"[T]he equity jurisdiction of the federal courts is the jurisdiction in equity exercised by the High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary Act, 1789 (1 Stat. 73)." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318 (1999) (quoting A. Dobie, Handbook of Federal Jurisdiction and Procedure 660 (1928)).

> The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims.

*Hecht Co. v. Bowles*, 321 U.S. 321, 329–30 (1944). "[D]istrict courts properly exercise their equitable jurisdiction where 'the remedy in equity could alone furnish relief, and . . . the ends of justice requir[e] the injunction to be issued.'" *Grupo Mexicano*, 527 U.S. at 335 (quoting *Watson v. Sutherland*, 5 Wall. 74, 79 (1867)). As a result, "equity is flexible; but in the federal system, at least, that flexibility is confined within the broad boundaries of traditional equitable relief." *Id.* at 322.

"It goes without saying that an injunction is an equitable remedy." *Weinberger v. Romero-Barcelo*, 465 U.S. 305, 311 (1982); *see also Mertens*, 508 U.S. at 256 (identifying injunctions, mandamus, and restitution as equitable relief). However, the inquiry as to whether an injunction fits within the Court's equitable power does not end there. "The historic injunctive process was designed to deter, not to punish." *Hecht*, 321 U.S. at 329. "[A]s one treatise put it, a court may not by injunction 'interfere for purposes of punishment, or . . . compel persons to do right' but may only 'prevent them from doing wrong.'" *Sec. & Exch. Comm'n v. Gentile*, 939 F.3d 549, 560 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 2669, 206 L. Ed. 2d 823 (2020) (quoting 1 James L. High, A Treatise on the Law of Injunctions § 1, at 3 (4th ed. 1905)). Therefore, "[t]he sole function of an action for injunction is to forestall future violations." *United States v. Oregon State Med. Soc.*, 343 U.S. 326, 333, 72 S. Ct. 690, 695, 96 L. Ed. 978 (1952). Furthermore, "in deciding whether to grant injunctive relief, a district court is called upon to assess all those

4

considerations of fairness that have been the traditional concern of equity

courts." *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1102 (2d Cir. 1972)

(citing *Hecht*, 321 U.S. at 328–30). "In short, injunctions may properly issue only

to prevent harm—not to punish the defendant." *Gentile*, 939 F.3d at 556 (3d Cir.

2019).

      B.     The SEC's Request For Permanent Injunctions Against Future
           <u>Violations of the Federal Securities Laws Must Be Denied</u>

The first of three remedies sought by the SEC in the proposed Final

Judgments submitted to the Court is a permanent injunction against further

violations of Section 15(a) of the Exchange Act and, solely for Jocelyn Murphy, an

additional permanent injunction against further violations of Section 10(b) of the

Exchange Act and Rule 10b-5 thereunder. Memorandum of Points and Authorities

in Support of Plaintiff's Motion for Remedies Order and Entry of Final Judgment

("SEC Remedies Mem."), p. 7.

As noted above, Section 20(b) of the Securities Act and Section 21(d)(1) of

the Exchange Act, by their plain language, authorize the SEC to seek permanent

injunctions only if at the time the action is filed, a defendant "is engaged or about

to engage in any acts or practices which constitute or will constitute a violation" of

the Federal securities laws. Here, the evidence presented to the Court in connection

with the SEC's motion for summary judgment and its present motion for penalties

demonstrates conclusively that neither Sean Murphy nor Jocelyn Murphy were

engaged in, or were about to engage in, any "acts or practices which constitute a violation" of either the Securities Act or the Exchange Act. As a result, the SEC simply does not have the necessary statutory authority under Section 20(d) of the Securities Act or Section 21(d)(1) of the Exchange Act to seek the permanent injunction remedies against Sean Murphy and Jocelyn Murphy.

In addition, even if the SEC did have statutory to seek a permanent injunction in the absence of any evidence that a defendant was "engaged in or about to engage in" violations of the Federal securities laws, the language of the permanent injunction requested by the SEC does not comply with the specificity requirements of Rule 65(d) of the Federal Rules of Civil Procedure. *See SEC v. Goble*, 682 F.3d 932, 952 (11th Cir. 2012) (an enjoined party must be able "to look within the four corners of the injunction to determine what he must do or refrain from doing" and cross-referencing "provisions of the United States Code and Code of Federal Regulation does not specifically describe the acts addressed by the injunction.") *See also S.E.C. v. Graham*, 823 F.3d 1357, 1362 n.2 (11th Cir. 2016).

The Ninth Circuit Court of Appeals has neither explicitly adopted nor rejected the *Goble* court's holding concerning the specificity of SEC injunctions. *See FTC v. EDebitPay, LLC*, 695 F.3d 938, 944 (9th Cir. 2012) (Ninth Circuit has "not adopted a rule against 'obey the law' injunctions per se."); *SEC v. Capital Cove Bancorp, LLC*, No. SACV 15-980-JLS, 2015 WL9704076, at *10 (C.D. Cal. Sept. 1, 2015) ("[I]t appears that courts within the Ninth Circuit have continued

6

granting preliminary injunctions with language that would otherwise be prohibited by *Goble*.") But the Ninth Circuit does enforce the specificity requirements of Rule 65(d). *See Columbia Pictures Industries, Inc. v. Fung*, 710 F.3d 1020, 1047-48 (9th Cir. 2013) ("[A]n ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed."); *Del Webb Communities, Inc. v. Patington*, 652 F.3d 1145, 1150 (9th Cir. 2011) (noting the "benchmark for clarity and fair notice is not lawyers and judges, who are schooled in the nuances of [the] law, but instead the lay person, who is the target of the injunction.") (internal quotation marks omitted).

This requirement for "clarity and fair notice" is especially important and appropriate with respect to the SEC's request for a permanent injunction against further violations of the Section 15(a) broker-dealer registration requirement. To establish a violation of Section 15(a) of the Exchange Act, the SEC need not prove that a defendant knowingly or intentionally violated that section of the Exchange Act. Prior to this civil enforcement action, the SEC had never taken the position in any public rules release or enforcement action that the type of business arrangement entered into between Sean Murphy and Mr. Ralph Riccardi/RMR required Mr. Murphy to register as a broker-dealer. There is nothing in the statutory language of Section 15(a) or the related definitions contained in the Exchange Act that put Mr. Murphy on notice of such an obligation. Based on

Ninth Circuit precedent that requires "clarity and fair notice", the Court cannot issue the "obey-the-law" injunctions requested by the SEC.

Finally, even if Section 20(b) of the Securities Act or Section 21(d)(1) of the Exchange Act authorized the SEC to seek a permanent injunction against Sean Murphy and Jocelyn Murphy and even if the language of the requested permanent injunctions could be squared with the Ninth Circuit's requirement of "clarity and fair notice" to a non-lawyer, the SEC's request for permanent injunctions must be denied because the evidence in this case demonstrates that there is no "reasonable likelihood of future violations of the securities law" in the absence of such injunctions. *SEC v. Fehn*, 97 F.3d 1276, 1295 (9th Cir. 1996). The SEC bears the burden of establishing such a "reasonable likelihood." *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980). In *Fehn* (quoting *Murphy*), the Ninth Circuit identified the following factors as relevant to the determination of a "reasonable likelihood" of a future violation in the absence of an injunction:

> (1) the degree of scienter involved; (2) the isolated or recurrent nature of the infraction; (3) the defendant's recognition of the wrongful nature of his conduct; (4) the likelihood, because of defendant's professional occupation, that future violations might occur; [and] (5) the sincerity of his assurances against future violations.

97 F.3d 1276, 1295-96.

<u>Scienter</u>

The SEC's Section 15(a) claim did not require any proof of scienter and there is zero evidence that either Sean Murphy or Jocelyn Murphy knowingly

violated Section 15(a) of the Exchange Act. Each of them opened brokerage accounts at various SEC-registered broker-dealers, transparently disclosed the relationship between those accounts and the prime brokerage account maintained by RMR, and then purchased and sold securities in accordance with the business arrangement they had negotiated with Mr. Riccardi and RMR.

With respect to the Court's finding that Jocelyn Murphy acted with scienter concerning the Zip Code Transactions, Mrs. Murphy respectfully disagrees that such a finding should have been made as a matter of law. However, Mrs. Murphy has repeatedly acknowledged that she was careless in those conversations with brokerage firm representatives, all of whom knew where Mrs. Murphy resided because she had disclosed that information to the brokerage firms when opening her accounts at the firms. Contrary to the SEC's argument in its motion papers, based on all the evidence before the Court, Mrs. Murphy simply did not act with "a *high degree* of scienter," if that phrase is to retain any significant meaning. SEC Remedies Mem., p. 11 (emphasis added).

Isolated or Recurrent Nature of Infraction

According to the SEC, the violative conduct was "far from isolated" because the business relationship with RMR and Mr. Riccardi lasted for a number of years. SEC Remedies Mem., p. 11. This argument blithely ignores that fact that the Section 15(a) violation found by the Court involved <u>one</u> business relationship and

9

that business relationship was terminated prior to the filing of the complaint in this action.

With respect to Mrs. Murphy's communications that involved erroneous zip codes, the SEC submitted trading data to the Court in support of its motion for summary judgment as to liability. *See* Declaration of Laura J. Cunningham dated April 24, 2020 ("April 2020 Cunningham Declaration") [Dkt. 115-2]. According to the SEC's analysis, Mrs. Murphy engaged in 2,410 bond transactions involving new issue securities. April 2020 Cunningham Declaration, ¶ 9. In connection with the SEC's motion for remedies, the SEC identified 21 transactions in which false zip codes were discussed between Mrs. Murphy and a brokerage firm representative. *See* Declaration of Laura J. Cunningham dated September 25, 2020, ¶¶ 3-23, Exhibits 1-21 [Dkt. 138-3]. Based upon the SEC's submissions to the Court, it is clear that "zip code" transactions represented a very small fraction of Mrs. Murphy's trading activities. Rather than "recurrent", the SEC's own submissions show that Mrs. Murphy's "zip code" transactions were unfortunate events that did not characterize her securities trading activities.

<u>Likelihood of Recurrence Based on Professional Occupation</u>

There is no dispute that Mrs. Murphy discontinued her securities trading business prior to the commencement of this action. With respect to Mr. Murphy, he continues to attempt to conduct a securities trading business that focuses on purchasing and selling equity securities. Mr. Murphy's business association with

RMR and Mr. Riccardi ended well before the SEC commenced this action and his current trading business is funded with loans from members of his wife's family and the profits generated from the trading business.

According to the SEC, "the evidence suggests a strong likelihood that Defendants may attempt to engage in the conduct addressed by the Court again. . . . [Sean] Murphy . . . testified under oath that as of November 2019, [he was] engaged, or would continue to be engaged, in securities trading using capital of another person. See . . . M. Murphy Tr. at 32-35; 151." SEC Remedies Mem., p. 12. The deposition testimony excerpt relied upon by the SEC for this argument is attached as Exhibit B to the Declaration of James Smith dated September 25, 2020. [Dkt. 138-2]. In that testimony, Sean Murphy simply stated that he had borrowed funds from friends and family members to fund his trading activity, <u>not</u> that he had entered into the same type of business relationship that he had maintained with RMR and Mr. Riccardi or that he ever intended to do so in the future. Contrary to the SEC's insinuation, there is simply nothing illegal about borrowing funds from family members and then using those funds to purchase and sell securities.

<u>Assurances Against Future Violations</u>

Both Sean Murphy and Jocelyn Murphy have submitted sworn declarations in response to the SEC's Remedies Motion that provide sincere assurances against future violations. In addition, Mrs. Murphy describes in that declaration her regret over her communications that involved erroneous zip codes.

11

As described in those declarations, the SEC's action has already had a substantial negative impact on their family's financial condition. Declaration of Michael Sean Murphy dated November 9, 2020 ("Sean Murphy Declaration"), ¶¶ ¶¶ 6, 9, 10, Exhibits C, D and E. Mr. and Mrs. Murphy are determined that all of their business activities will not raise the slightest question of compliance with the Federal securities laws. So that the Court can personally assess their sincerity and credibility, both Sean Murphy and Jocelyn Murphy respectfully request the opportunity to testify in person at the hearing concerning the SEC's Motion for Remedies.

Based on the evidence before the Court and the evidence that Sean Murphy and Jocelyn Murphy hope to present at the hearing in December, this Court should deny the SEC's motion for permanent injunctions against further violations of certain provisions of the Federal securities laws. In addition to the legal issues identified above concerning the SEC's authority to seek such injunctions and the problematic language of the requested injunctions, the SEC simply has not established a "reasonable likelihood" that either Sean Murphy or Jocelyn Murphy will violate any provision of the Federal securities laws in the absence of such injunctions.

C.    The SEC's Request For A "Specific
       Conduct" Injunction Must Be Denied

The second of three remedies proposed by the SEC is an injunction that

prohibits Sean and Jocelyn Murphy from:

> for a period of ten (10) years from the date of this Final Judgment
> from, directly or indirectly, opening or maintaining any brokerage
> account(s) without providing the relevant brokerage firm(s) a copy of
> the Complaint and a copy of this Final Judgment.[1]

According to the SEC, the factual bases for such an injunction are that Sean

Murphy and Jocelyn Murphy opened various brokerage accounts and, during the

time they maintained a business relationship with RMR and Mr. Riccardi, linked

those accounts to the prime brokerage account maintained by RMR. SEC

Remedies Mem., p. 9. The SEC argues that the purpose of the requested "specific

conduct" injunction is to "effectively police future conduct." *Id*.

As noted above in Section I.A., Federal Courts possess equitable power to

issue injunctions "only to prevent harm—not to punish the defendant." *Gentile*,

939 F.3d at 556 (3d Cir. 2019). In addition, the SEC is authorized to seek equitable

relief only to the extent such relief is "appropriate or necessary for the benefit of

investors."

Here, there is no connection between the SEC's proposed "specific conduct"

injunction and the prevention of any future harm. Nor is there a link between this

---

[1] Paragraph III, Proposed Final Judgment submitted to the Court by counsel for the
SEC via email September 25, 2020.

13

injunction request and any tangible benefit to investors. Rather, the clear purpose of the requested specific conduct injunction is to deter Sean Murphy and Jocelyn Murphy from engaging in *any* securities trading activities and implicitly encourage the broker-dealers that have allowed Sean Murphy to maintain a small number of brokerage accounts to close those accounts as well.

The importance of ensuring that equitable remedies are narrowly tailored to fit within the Court's equitable power was recently emphasized in *Liu v. SEC*, in which the Supreme Court narrowly tailored another avenue of equitable relief, disgorgement, to fit within the principle that equitable relief should prevent harm, not punish the defendant.140 S. Ct. 1936, 1940 (2020). In *Liu*, the Court found that a disgorgement remedy was permissible equitable relief under 15 U.S.C. § 78(u)(d)(5) as long as the disgorgement award did not exceed the wrongdoer's net profits and the money was returned to the victims. *Id.* These limitations were necessary to ensure that the use of disgorgement did not turn into a "punitive sanction." *Id.* at 1942.

Here, the SEC's proposed specific conduct injunction on its face does not address any harmful future conduct, does not provide any tangible benefit to investors, and is clearly punitive. Therefore, such an injunction is beyond the scope of this Court's equitable powers and the SEC's statutory authority. The fact noted by the SEC that it has coerced a number of individual defendants in this case to

consent to such a remedy does not change either the Court's equitable power or the

SEC's statutory authority.

**II.    Any Financial Penalties Imposed By The Court Against
Sean Murphy and Jocelyn Murphy Should Be Based
Upon Gross Pecuniary Gain Received By Defendants**

Section 20(d) of the Securities Act states, in relevant part:

(1) Authority of the Commission

Whenever it shall appear to the Commission that any person has
violated any provision of this subchapter, . . .  the Commission may
bring an action in a United States district court to seek, and the court
shall have jurisdiction to impose, *upon a proper showing*, a civil
penalty to be paid by the person who committed such violation.

 (2) Amount of penalty

(A) First Tier

The amount of the penalty shall be determined by the court *in light of
the facts and circumstances.* For each violation, the amount of the
penalty shall not exceed the greater of (i) $7,500 for a natural person
. . . . or (ii) *the gross amount of pecuniary gain to such defendant as a
result of the violation*.

\*        \*        \*        \*

(B) Second Tier

Notwithstanding clause (i), the amount of penalty for each such
violation shall not exceed the greater of (I) $80,000 for a natural
person . . . ., or (II) *the gross amount of pecuniary gain to such
defendant as a result of the violation*, if the violation described in
subparagraph (A) involved fraud, deceit, manipulation, or deliberate
or reckless disregard of a regulatory requirement.

15 U.S.C. §77t(d) (emphasis added). Section 21(d)(3) of the Exchange Act provides identical authority to the Commission and this Court concerning the imposition of monetary penalties for violations of the Exchange Act.[2]

Here, the SEC requests that this Court impose a penalty of $523,863 upon Sean Murphy, equal to the Tier 1 base penalty amount times 65, based upon the number of months that elapsed from November 2011 through March 2017. For Jocelyn Murphy, the SEC requests imposition of a monetary penalty of $1,761,920, equal to a Tier 2 base penalty amount times 21, based upon the number of new issue municipal bond transactions identified by the SEC in which Mrs. Murphy engaged in communications involving false zip codes.

Neither the Securities Act nor the Exchange Act provides guidance concerning how to determine the number of "violations" for purposes of calculating an appropriate penalty. While some Courts have based penalties on multiple violations due to the "facts and circumstances" present in those cases (*see* SEC Remedies Mem., pp. 3-4), other Courts have chosen to impose a flat penalty based upon a defendant's gross pecuniary gain or a single Tier 1, 2 or 3 base penalty amount. *See SEC v. All. Transcription Servs., Inc.*, No. CV 08-1464-PHX-NVW, 2010 WL 483792, at *2 (D. Ariz. Feb. 8, 2010) ("imposed a flat penalty

---

[2]     As noted by the SEC, the base amounts of the Tier 1 and Tier 2 penalties increased to $9,369 and $96,384, respectively, for violations occurring after November 2, 2015. SEC Remedies Mem., pp. 5-6, fn. 2, 4.

equal to the defendant's gross pecuniary gain . . ."); *SEC v. Invest Better 2001*, No. 01-CV-11427 (BSJ), 2005 WL 2385452, at *5 (S.D.N.Y. May 4, 2005) ("The exact number of violations committed by the Defendants is nearly impossible to determine. Therefore, the Court imposes a flat penalty equal to the gross amount of pecuniary gain as a result of the total number of violations."); *S.E.C. v. Interlink Data Network of Los Angeles, Inc.*, No. CIV. A. 93-3073 R, 1993 WL 603274, at *13 (C.D. Cal. Nov. 15, 1993) (holding that a "one-time penalty, equal to the gross amount of pecuniary gain to the defendant issuers as a result of their violations" was the appropriate fine). *See also SEC v. GTF Enterprises, Inc.*, No. 10-CV-4258 (RA), 2015 WL 728159, at *4 (S.D.N.Y. Feb. 19, 2015) ("[T]he Court may consider the number of statutes that each Defendant violated, or whether the violations were all part of a single scheme.") (collecting cases); *SEC v. One Wall St., Inc.*, No. 06-CV-4217 (NGG) (ARL), 2008 WL 5082294, at *9 (E.D.N.Y. Nov. 26, 2008) ("A review of the relevant case law indicates that the amount of the regulatory penalty assessed should have some relationship to the amount of ill-gotten gains.") (collecting cases).

In making its request for imposing more than $2.2 million in monetary penalties against the Murphy family based upon multiple "violations", the SEC does not disclose in its Motion for Remedies the "gross amount of pecuniary gain" that either Sean Murphy or Jocelyn Murphy received as a result of the violations, which is the statutory alternative basis for determining an appropriate monetary

17

penalty. However, these amounts can be derived from spreadsheet reports prepared by the SEC concerning the relevant bond trading activity of Sean Murphy and Jocelyn Murphy and previously submitted to the Court in this action. Based upon the SEC's prior submissions, the gross amount of pecuniary gain for Sean Murphy is approximately $28,400. Sean Murphy Declaration, , ¶ 5, Exhibit A. For Jocelyn Murphy, the gross amount of pecuniary gain for the 21 "zip code" transactions is approximately $3,700. Declaration of Jocelyn Murphy dated November 9, 2020, ¶ 5, Exhibit A. While it is true that a monetary penalty *may* be imposed for "each violation", the SEC does not attempt to explain *why* the Court *should* impose more than $2.2 million in civil monetary penalties even though the gross pecuniary gains calculated by the SEC amount to less than $35,000.

In fact, when considering the relevant facts and circumstances, this Court should consider whether a "per violation" penalty would be "unjust and inequitable" when compared to a defendant's gross pecuniary gain and the sanctions imposed on other defendants in an action. *SEC v. CMKM Diamonds, Inc.*, 635 F. Supp. 2d 1185, 1192 (D. Nev. 2009). *See also SEC v. Brookstreet Sec. Corp.*, No. 09-CV-1431 (DOC) (ANX), 2014 WL 12689999, at *5 (C.D. Cal. Dec. 18, 2014) (in assessing penalties, Court should consider degree of culpability of defendant's conduct), *aff'd sub nom. U.S. Sec. & Exch. Comm'n v. Brookstreet Sec. Corp.*, 664 F. App'x 654 (9th Cir. 2016) (citing 15 U.S.C. § 78u(d)(3)(B) (stating

that civil penalties are "determined by the court in light of the facts and circumstances.")

The monetary penalties sought by the SEC against Sean Murphy and Jocelyn Murphy are so extreme that, if imposed by the Court, such monetary penalties would constitute a violation of the Excessive Fines Clause of the Eighth Amendment to the United States Constitution. *See Austin v. United States*, 509 U.S. 602, 609–610, 113 S. Ct. 2801, 2805, 125 L.Ed.2d 488 (1993) (Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, "as punishment for some offense.") "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *U.S. v. Bajakajian*, 524 U.S. 321, 334 (1998). In *Bajakajian*, the Supreme Court held a Government fine violates the Excessive Fines Clause of the Eighth Amendment "if it is grossly disproportional to the gravity of a defendant's offense." *Id. See SEC v. Brookstreet Securities Corporation*, 664 Fed.Appx. 654, 656 (9th Cir. 2016) (analyzing Excessive Fines Clause to penalty imposed in SEC enforcement action).

In addition to being grossly disproportional to the gross pecuniary gain measure of a monetary penalty, the penalties sought by the SEC are also astronomically higher than the penalties imposed on similarly situated defendants in both this very case and other municipal bond securities enforcement actions

brought by the SEC. Attached as Appendix A to this memorandum of law is a chart identifying the amount of financial penalties imposed in those other cases. The amount of penalties ranges from a low of $7,500 to a high of $150,000. The defendants who paid the highest $150,000 penalty were: (a) Mr. Ralph Riccardi; and (b) James Scherr. The Court is already familiar with Mr. Riccardi. Mr. Scherr was the owner of a firm similar to RMR and, according to the SEC, Mr. Scherr paid kickbacks to a municipal underwriter in order to obtain allocation of new issue municipal bonds.

One defendant in *SEC v. RMR*, David Luttbeg (like defendants Sean Murphy and Richard Gounaud) was charged by the SEC only with a Section 15(a) violation and <u>not</u> with any fraudulent or deceptive conduct. This Court entered a Final Judgment On Consent against Mr. Luttbeg in which the monetary penalty demanded by the SEC and ordered by this Court was $7,500.

Finally, in determining the appropriate amount of a monetary penalty, this Court should consider the Murphy family's ability to pay such fines as one factor in the Court's analysis. *SEC v. Mizrahi*, 2020 WL 6114913, *2 (C.D. Cal. 2020); *SEC v. Jasper*, 883 F. Supp. 2d 915, 931-32 (N.D. Cal. 2010). Here, based on the financial information that Sean Murphy seeks to file under seal, if the Court were to impose the fines requested by the SEC, the Murphy family would suffer permanent financial devastation. Based on all the evidence before the Court, there is no reasoned basis for inflicting that harm on this family.

# **CONCLUSION**

For the reasons set forth above, the evidence already before the Court, the accompanying sworn declarations of Sean Murphy and Jocelyn Murphy, and the prospective in-person testimony of both Sean Murphy and Jocelyn Murphy, this Court should deny the portion of the SEC's motion for remedies that seeks injunctive relief against either Sean Murphy or Jocelyn Murphy. The Court should deny the SEC's request for monetary penalties that are utterly unjustified by the undisputed facts and applicable law and, instead, assess monetary penalties based upon the profits received from the securities transactions identified by the SEC as violations of the Federal securities laws.

Dated:       November 9, 2020            Respectfully submitted,

                                         SHER TREMONTE LLP


                                         By: /s/ Robert Knuts
                                             Robert Knuts

                                         Attorneys for Defendants
                                         Michael Sean Murphy and
                                         Jocelyn M. Murphy

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2020, I caused the foregoing MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO TO PLAINTIFF'S MOTION FOR REMEDIES ORDER AND ENTRY OF FINAL JUDGMENT, as well as the accompanying sworn declarations of Michael Sean Murphy and Jocelyn Murphy and the attached exhibits to those declarations to be served on the individuals identified below by both Electronic Mail and E-Filing:

James E. Smith, Esq.
Christian Schultz, Esq.
Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549
Email: smithja@sec.gov and schultzc@sec.gov

Counsel for Plaintiff


Mr. Richard Gounaud
9 Cliffwood Road
Chester, NJ 07930
Email: rgounaud@gmail.com

Defendant, *pro se*

I declare under penalty of perjury that the foregoing is true and correct.


Date: November 9, 2020                    /s/ Robert Knuts
                                          Robert Knuts

22